Do we have Mr. Marion here? Yes, Sean. Okay, terrific. Whenever you're ready. Good morning, Your Honor. Please come up here so we can hear you. Thank you. I must admit that I was approaching this with some trepidation up until this morning. Either I am completely correct or completely incorrect. And I was reading the regulations as late as this morning. The issue before us is whether or not the one in the regular rate is included in the payroll or, as I propose, it should be calculated in the same manner as the 1.5%. Now I present to you, first of all, two issues. The two primary cases relied upon by the United States are Brooks v. Weinberger and the Bay Ridge case. Bay Ridge is based upon footnote 34, which is non-binding precedent, which is on page 20 of the brief, gives a calculation that the regular rate is based upon the amount that is already paid. The Brooks v. Weinberger case has some serious issues and this is why I would like this Court to revisit the Brooks v. Weinberger case. First of all, the Brooks v. Weinberger case incorrectly, according to their calculation, calculates the regular rate. We've already agreed upon the regular rate. Brooks v. Weinberger offers a second and incorrect calculation of the regular rate. The second problem with Brooks v. Weinberger is that it deals with firefighters under the OPM Title 5. It has no application to the folks to work under Title 29. You're saying the Brooks case is about firefighters? It is, Section 5. I seem to recall the Zummerling case is about firefighters, right? You are correct on that. So, you've been talking about Bay Ridge and Brooks, but did you mean to say Bay Ridge and Zummerling? Those are the two cases that you want to... I'm relying on page 20 of the appellee's brief, in which they cite Brooks, starting at page 19, and then go into Bay Ridge. This is the basis of the relegal case. The problem I have with the analysis is this. If we look at the payroll, which I've outlined on my reply brief on page 10, we have pay codes. The 207 says, and I'll quote what the statute says, and we'll start with that. unless his employee receives above a specified rate, and not less than 1.5 times the rate at which he's employed. There's no comma. Under the United States analysis, the United States goes into the dichotomy of aggregate and marginal, which is confusing. It's confusing to me. It's confusing to the courts, I believe, across the board. The problem here is secondary. The United States alleges that we cannot use the hours over 40 in the calculation for the 1 and the 1.5, and then turns right around and calculates using the same amount of hours over 40 to get to 0.5. So they're using a marginal rate, apparently, on the 1.5, but prohibiting it on the 1. I'm sorry, did you say they're using the marginal rate on the... On the 1.5, on the 50% of the 150%? Apparently, because they're actually, if you look at the calculations, for example, on my page 10, the overtime hours that we agree upon are 7.12 and 8.35. These are the precise numbers that are used in the formula. So they use the hours over 40 to calculate the 0.5, but then turn around and say that you cannot use the over 40 under this aggregate approach for the 1. So there's an illogic between the two. Let me see if I can understand your argument. Let me repeat what I think is the gist of the government's understanding of how to calculate the overtime pay, and then you'll tell me where they get it wrong. First, they assume, they need to pay 1.5 times for overtime. And as I understand it, they've deemed that they've already paid the 1. Now you have to calculate the 1.5. And they calculate the 1.5 by figuring out the regular rate. And then they multiply the regular rate by 0.5 and then multiply that to the number of actual overtime hours worked for a given week. And then they arrive at the 1.5. And then that is what the employee gets. Do you agree with that approach? I disagree on two points. First of all, you say deem. We'll get to that in a second. We'll get to the secondary part of that first, and I'll approach the second. The fundamental issue is that the multiplier is not used in the one. The multiplier, it is the 0.5 times the regular rate, and there is a multiplier. This ties now into the deeming part. Under their analysis, this is an aggregate. This is a total of all that is paid. But if we look carefully at the overtime hours that should be paid, for example, on week one of 8.35 hours. I'm sorry, what page are you on right now? Page 10 of my reply brief. This is taken out of Mr. Rosario's book, but this is an example. Under the United States analysis, they've paid the regular rate for these hours for the first 40. They, number one, put the over 40 hours into a bucket and prorate all the overtime under 40 and over 40. The statute says that you must multiply that regular rate times 1.5. They are alleging that you put it all into a bucket, and because it's prorated across the hours, all of a sudden have the regular rate. The regular rate is derived from the total divided by the hours, but then the statute requires that you pay the one using the regular rate. Do you agree that the 1.5 and the 1.5 is properly calculated? I agree that the 1.5 is calculated, which brings me to a secondary portion. If we look into 29 CFR 778.110.11.12.13.17.18, the Department of Labor has gone into excruciating detail to segregate, for example, specialty tasks, day workers, hourly rates. USPS workers are not hourly rate workers. The DOL that I checked this morning says for day workers, it's 0.5 times the regular rate. Not 1.5, not standard 0.5. In each of these categories, they actually break down from what should be a regular full-time employee to lesser status employees. Day workers, specialty task workers, commission workers, office workers, each one of these has a different rate. Standard plus half, one half only. Only the full-time salaried employees are 1.5. If their analysis is true, what happens to the 1% or the 1 times under those scenarios? Is it magically reduced or deducted? The DOL says 0.5 for day workers. What happens to the 1? If the 1 is paid as a matter of course, what happens to that for day workers? Why did the DOL not say 1.5? I understand the government's brief. They try to explain this at pages 28 through 30. They walk through how it is that the 1 is calculated, and it's broken into different parts. If you could, could you identify for me exactly which steps you take issue with, or where you see them departing from what you expect them to have done in their calculations at page 28 through 30? The fundamental issue is that their calculations, that's a good point because we've had issues on how they actually arrive, and this goes into a genuine issue of material fact. How do they actually arrive at these hours? Where are they actually located? And don't forget, this is on summary judgment. This didn't go to trial, so we're dealing with a secondary issue which is not really addressed in their brief. The problem is, almost magically, the overtime hours that are listed in pay code 53, in these two instances there's an additional 54 and 55, each of these are almost identical to the FLSA overtime. What they're doing is, they apparently are cross paths. We don't know if this is where they segregate the FLSA overtime or how they do it, but what they do is they take the one-third reduction, but they don't add back in. They simply add all of the holiday pay, all of the weekend hours, and say this is your one rate. This can't stand under the logical analysis. If we read all the statutes, if we read the case law, there's been a fundamental misinterpretation deriving from that one footnote in Bay Ridge, which is not an authoritative, and Brooks v. Weinberger categorically, I believe, misapplied this. This has not really been litigated, hasn't been touched upon. We've touched upon firefighters, day workers, and other statutory, but this fundamental issue has never been really scrutinized. I would challenge this Court to read with a strategic eye Brooks v. Weinberger and ask yourself, how is it that the one, if you read the statute carefully, how is the one paid? We have an aggregate amount of the first part of it. We have an aggregate total, which is across all 45 plus or 40 under, but the multiplier, there's two steps. We must identify the regular rate, the statute requires that, and then we must multiply those hours by the regular rate. There's a lot of misunderstanding and confusion on aggregate versus the marginal approach. I would suggest that we put that aside. But you agree it's appropriate to use the aggregate approach under Bay Ridge, right? I would believe this is a misinterpretation. I believe it's a misinterpretation because I believe there's been a fundamental misunderstanding and misreading of the application of the due. This goes back to Bay Ridge. Look at the footnote, look at the case law. I think that even the OPM and even the Department of Labor, and I've put in two of my footnotes, use a 1.5 multiplier. They take the actual hours over 40 and use it, and I can, if you want, I can put it into the record, but it's actually two or three times as it's in my footnote. There is a 1.5 multiplier on two websites where they actually place that. Mr. Maron, you're into your rebuttal. Do you want to reserve the remainder of your rebuttal? I do, thank you. Okay, very good. Let's hear from the government. Mr. Oliver? May it please the Court. The trial court correctly held that the Postal Service complied with the Fair Labor Standards Act and paid overtime in accordance with that act, but not only did it comply with the act, but it paid more than was required by the FLSA. So the standard is that the Postal Service is required to pay one and one-half times the regular rate for overtime hours of work, right? That's correct, Your Honor. So one theme from Mr. Maron is that that didn't happen here and that for the overtime hours worked, the initial one of the one and a half was not paid out at the regular rate, and it ought to be. And so for that reason alone, there's a flaw here because we need to go back in time and figure out how was the initial one of the one and a half paid. That's incorrect. Appellants concede on page 38 of their brief, as well as an oral argument today, that the government correctly calculated the regular rate. So we have to understand what the regular rate is. The regular rate by statute is all of the payments that are made to the employee minus overtime premium divided by the total amount of hours. And so what it is is an average. And so the payroll establishes that all of the various components of the regular rate were in fact paid. What are those components? They are, for instance, the base pay for all of the hours, non-overtime and overtime. It's any differential premium. It's the territorial cost of living adjustment. All of those components were paid for all the hours, but specifically what's important is they were paid for the overtime hours, which means that the regular rate, before you even get to the calculation of the overtime premium, the regular rate has been paid here because all of those components were paid. And so one times the regular rate has been paid, so what you then must do is calculate what half of the regular rate is times the overtime hours. And since the appellants do not dispute that we calculate the regular rate correctly, that necessarily means that the numerator in that formula, which is all of the components of the regular rate calculation, were correctly calculated. And so, for instance, on page 32 of our brief, we have a table which we lay out the various components of the regular rate calculation. Code 52 is the base pay. That was paid for all hours. That correlates with what's in the pay stub. Code 53 is the postal overtime. So for regular rate purposes, only the base portion of that goes into the regular rate. But that was paid. 54 is a night differential. All $76 of that were paid. These are all directly correlated to the pay stub. I don't understand appellants to be disputing that they were paid. Since they were paid, that means, therefore, that the one portion of the regular rate has been paid before you even get to the overtime premium. Now, appellants mentioned Bay Ridge and questioned it's unclear to me to the degree to which they are questioning whether or not the aggregate approach, which falls from the Supreme Court's decision, is appropriate. Not only was it in the footnote in Bay Ridge where the Supreme Court found that that approach was reasonable, but, in fact, all of the court challenges that have been made have sustained the aggregate approach. And it's entirely consistent with the Fair Labor Standards Act. One, because the regular rate is an average. Second, because the alternative, which is the marginal approach, which would have you look at the hours that are to be multiplied by the overtime rate and you assume that those overtime hours are the hours for which you must multiply the overtime rate. That approach does not match up with the FLSA. Because under the FLSA, if you look at 29 U.S.C. 207 E-5 and E-6, this deals with non-overtime and overtime premium. Non-overtime premium is included in the regular rate regardless of when it was earned. One. Second, overtime premium, which is excluded from the regular rate and is credible and contract overtime premium is credible against the FLSA, that may be excluded and be credible regardless of when that overtime was earned, whether or not it was during the first 40 or whether or not it was earned after the 40-hour mark, which tells you that, for purposes of the FLSA, the aggregate approach is the correct approach and it's certainly a reasonable interpretation of the FLSA's requirement. Now, in Appellant's brief, their chief issue with our calculations, although I didn't hear it articulated today, their chief issue with our calculations is that they assume that the Postal Service is only calculating overtime with respect to the base rate times overtime hours. They concede we get the half times the regular rate correct, but they assume that we're not paying the full one. Well, I guess that is somewhat consistent with his argument, but he didn't mention the base rate. Well, again, his concession, the Appellant's concession that we have calculated the regular rate correctly defeats that argument because the regular rate is not just the base rate. It's the base rate for all hours plus all the premium and any additional premium. So, therefore, the regular rate necessarily is more than just the base. And so that defeats their argument. And another thing, and I think this perhaps is where Appellants are getting that confusion as to, well, you're only paying the base rate. They, in their brief, continuously confuse Postal Overtime and FLSA Overtime. Completely different concepts because Postal Overtime, according to the Postal Service's manual, is yes, it's 40 if you can get overtime for Postal Service if you're over 40, but also if you have any particular day over eight hours, which is not the case with FLSA. Moreover, for Postal Service Overtime, that's one and a half times the base rate as opposed to FLSA, which is one and a half times the regular rate. And, again, that's where their confusion is. You conflate the two and they assume that, oh, well, Postal Service time is, if that's the same as FLSA and Postal Service is one and a half times the base, that, therefore, means we're only paying at the base. That's incorrect. One, because these are two different concepts for the reasons I just mentioned. Is that why you have line 52 in the pay stub? Would that be the reason why? Why it's base pay times one is because you've got this difference with the postal pay versus the LSA? That's exactly right, Your Honor. Line 52 is the base, and so that's paid for all of the hours, not just the 40, but for the overtime as well as reflected in our table and reflected in the pay stubs. And so once you understand that postal overtime and FLSA are completely different concepts, you can't commingle them and assume that they're one and the same. That leads to a large degree of their errors in their brief. In addition, and this is another error that they make in their brief, and actually they can see that their math is wrong in their reply brief. They acknowledge their opening brief calculations are wrong. So focusing on the reply brief, the chief error in their reply brief is that, again, they don't give the Postal Service credit for having already paid one times the regular rate. So when they're trying to calculate the net premium, the premium at the end of the day that's going to appear on the pay stubs, they multiply the overtime hours times one and a half. Well, that's incorrect because, one, it doesn't acknowledge that we've already paid all of the various components of the regular rate before you get to overtime. So in effect, what they're doing is, although they won't acknowledge this, but the effect of their theory is that it will require the Postal Service to pay two and a half times the regular rate. And that's something that various plaintiffs over the years have done in various courts. And I've cited these briefs where the courts have said, no, your theory when you don't give us the agency credit for having paid the regular rate results in two and a half times the regular rate. And that's, at the end of the day, the error that the appellants make in their reply brief, which I believe is the calculations that they're standing by today. Unless there are any further questions, we ask that you affirm the decision by the trial court. Okay. Thank you. Mr. Marion, you still have four minutes. Much as predicted, these are the very arguments that I was anticipating. First of all, we're not asking for 2.5 times the rate. We're asking for the difference between what is paid and 1.5. It's our position that the one has not been paid. It's one times, and the United States just mentioned one times. The multiplier is there. How do you respond to the position that the various components of the FLSA have already been paid? It's not the components of the FLSA. These are premium payments. We're talking about the hours over 40. And I'm reading strictly from the statute. It requires 1.5 times the regular rate. These have been put into a pot. They've been prorated over 40, under and 40-plus hours. But at no point was a specific payment. Well, you can't say that Mr. Marion hasn't been paid anything yet for those additional overtime hours, right? Exactly. He got the various components of money attributed to those additional hours' worth. Exactly. However, again, there's a two-part analysis I think has been fundamentally missing. The regular rate is the multiplier. The hours must, after the regular rate is calculated and the deductions and exemptions are applied, the regular rate must be applied to the 1.5. In addition to what's already been paid? No, not in addition to it. There should be some offset. There should be some offset. But the way that this is structured, there's no way to determine what is the offset. I take issue with, first of all, that all cases have fallen down this way. I point out the Ag 1 Massachusetts case as an example where 1.5 was upheld. But fundamentally, one more point as a quick aside. I'm running out of time. I point out to 778.203, holiday pay in one of the fundamental errors in one of the lower cases, I think it was Brooks, arrived at the aggregate approach. And I'm simply asking this Court to take a new look at aggregate versus because it's not set in stone. It's never been set in stone. Even the DOL and the United States has admitted confusion. It's not set in stone. If you look at 778.203, the premium payments for overtime payments under 150% are not applied or applicable to the FLSA. Over they are. Therefore, the analysis that's used on page 20 of the United States brief, which is based upon Brooks, has a faulty fundamental error because it mixes apples and oranges. It mixes exemptions with FLSA, which shouldn't be. If it's under 150, it has no bearing. They should be paid on top of that. You can't mix the two. That's the very basis of the aggregate approach. And finally, we don't confuse postal overtime with FLSA overtime. We've never confused the two. It's just that in this example, it just so happens that the two are the same. Eight-hour overtime is exempt. You can reduce one-third from the FLSA overtime. But the fundamental issue is that this court will have the great opportunity to revisit this. This is not set in stone. The marginal, the aggregate, or possibly a third approach. And I challenge this court to take a very – I've been over this law back and forth. And it's nowhere as clear set as the United States would have you present because each of the cases that they presented deal with the specific sections, the specific regulations of the different types of employment. The only way this makes sense is under our approach. If you cannot reconcile if the Department of Labor says 0.5 from one section, a standard 0.5 for another type of employee, and for full-time employees, 1.5, how do you reconcile anything before the 0.5? If their analysis is correct, does that one magically disappear? Does that make sense? If part-time employees shall, by statute, by the regulation, be only paid 0.5, but full-time employees are 1.5, under their analysis, if the one is already paid, why did the Department of Labor go into all this rigmarole to isolate the 0.5 from the one? Okay. Thank you very much. We have your argument and the case is submitted. Thank you, Your Honor.